IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMBER BLUNT, et al.            :        CIVIL ACTION
                               :
        v.                     :
                               :
LOWER MERION SCHOOL            :
DISTRICT, et al.               :        NO. 07-3100

MEMORANDUM

Bartle, C.J.                                February 15, 2008

        Plaintiffs are seven students or former students of the
Lower Merion School District, the parents of six of these
students, and two advocacy organizations, Concerned Black Parents
and the Mainline Branch of the NAACP.  Each of the individually
named plaintiffs is African American.  Plaintiffs filed this
putative class action on July 30, 2007 seeking injunctive and
monetary relief against defendants for disability and race
discrimination.

        The defendants, as set forth in the Amended Complaint,
can be divided into two groups.  First are the School District
defendants:  (1) the Lower Merion School District ("School
District"); (2) School District Superintendent, Jamie Savedoff;
(3) School District Director of Pupil Services, Michael Kelly;
(4) Lower Merion School Board ("School Board"); (5) School Board
President, Susan Guthrie; (6) School Board Vice President, Linda
Doucette-Ashman; and (7) School Board Members, Gary Friedlander,
Lyn Kugel, Diane Dibonaventuro, Theodore Lorenz, Jerold Novick,

Lisa Pliskin and David Ebby.[1]  There are also the Commonwealth defendants, which were added when the Amended Complaint was filed on September 26, 2007:  (1) the Pennsylvania Department of Education ("Department of Education"); (2) the Secretary of the Department of Education, Gerald Zahorchak; and (3) the Director of the Department of Education's Bureau of Special Education, John Tommasini.  All of the individually named defendants were sued in their official capacities only.

Plaintiffs' Amended Complaint contains six counts alleging violations of:  (1) Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* in Count I; (2) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* in Count II; (3) Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794 in Count III; (4) Title VI of the Civil Rights Act ("Title VI"), 42 U.S.C. § 2000d in Count IV; (5) the Civil Rights Act of 1964 ("§ 1983"), 42 U.S.C. § 1983 in Count V; and (6) the Pennsylvania Public School Code of 1949 ("Public School Code"), 24 Pa. Stat. Ann. § 1371, *et seq.* and the State Board of Education Regulations promulgated

---

1.  The complaint originally included as defendants Lawrence Rosenwald, in his official capacity as School Board President, Marcia Taylor, in her official capacity as School Board Vice President, and Jonathan Gelfand in his official capacity as a School Board Member.  On December 18, 2007 the parties stipulated that these three defendants would be dismissed with prejudice, and that defendants Guthrie, Doucette-Ashman and Ebby would be substituted in their stead pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

thereunder, specifically, 22 Pa. Code §§ 14.121(b) and (c) and 14.122 in Count VI.

Now pending before the court are the motions of the School District defendants and Commonwealth defendants to dismiss the Amended Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim for which relief can be granted. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991); Gould Elecs. Inc. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000).

I.

For present purposes, we will accept as true the following facts set forth in the Amended Complaint. Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004).

Plaintiff Amber Blunt is a former student of the School District who was graduated from Lower Merion High School on June 9, 2005. Despite the fact that Amber had consistently struggled in school, the School District did not identify her as a student with a specific learning disability or provide her with an individualized education program until she was in the tenth grade. Even then, the support with which Amber was furnished did not take into account Amber's intention of pursuing post-secondary education. In particular, the School District failed to develop and implement a proper post-graduation transition plan. Amber's parents, plaintiffs Crystal and Michael Blunt, requested transitional services in the form of a six-week

-3-

remedial program required by West Chester University as a condition of Amber's admission to that institution.  The School District rejected the Blunts' request on April 8, 2005.

On April 11, 2005, the Blunts requested a due process hearing under the IDEA.  They contended that in violation of the IDEA the School District had failed to provide Amber with a free appropriate public education.  The due process hearing was held over the course of two sessions – the first on May 19, 2005, and the second on June 20, 2005.  According to the Blunts, the hearing officer did not permit them sufficient time to put on their case while the School District was afforded ample opportunity to do so.  They maintain that, as a result of their truncated presentation, much of the information pertinent to Amber's case was omitted from the record and they were thus denied a full and fair opportunity to address the appropriateness of the transitional services provided to her.  On July 25, 2005, the Hearing Officer issued his decision.  He determined among other things that the School District failed to design an appropriate transition plan for Amber and denied her any relief for this failure.  Both the Blunts and the School District filed exceptions to the Hearing Officer's decision.  After considering the matter, the Appeals Panel ruled on August 31, 2005 that Amber should receive "30 hours of compensatory education for remedial transition services."  It limited Amber's entitlement to compensatory education to one year before the request for a due process hearing was filed.  Amber, Crystal and Michael Blunt

-4-

("Blunt plaintiffs") thereafter filed this action challenging the Appeals Panel's decision.

The Blunt plaintiffs also allege that Amber was discriminated against on the basis of race when she was placed into a kindergarten summer reading program attended primarily by African-American students and placed into a high school summer mathematics course attended by a disproportionately high percentage of African-American students.

Plaintiff Lydia Johnson is a former student of the School District.  In 1995, when she was in first grade, the School District identified her as a student with a learning disability and began giving her support services.  Although those services were discontinued, Lydia received an evaluation and an individualized education program in 2000, which was reviewed and reevaluated in 2004 and again in 2006.  Though Lydia was eligible to be graduated in 2006, she declined her diploma because her mother did not consider her sufficiently prepared to do so. During the 2006-2007 school year, Lydia returned to Lower Merion High School two mornings a week for additional instruction. Neither she nor her mother, plaintiff Linda Johnson, has requested a due process hearing challenging the development or implementation of her individual education plan.

Plaintiff Saleema Hall is a seventh grade school student in the School District.  She was evaluated by the School District in 2004, was classified as a student with a specific learning disability and has been provided with a regular

-5-

education program with pull-out participation in a below-grade-level class comprised of approximately 90% African-American students.  Her sister, plaintiff Chantae Hall is a tenth grade student in the School District.  She was evaluated in 2000 and provided with an individualized education program.  Chantae was reevaluated in 2003 and 2007 and has received continuous support services during this period.  When Chantae was placed in two learning support classes with students who had disabilities, the students were predominately African American.  Plaintiff Carol Durrell, the mother of Saleema and Chantae, has expressed concerns to the School District about her daughters' education but has not sought a due process hearing.

Plaintiff Walter (Jonathan) Whiteman is a ninth grade Lower Merion student.  He was identified as a student in need of special education services when he was in first grade.  He was pulled from the general education curriculum to participate in classes with a below-grade-level curriculum and therefore was denied access to the general education classes provided to his Caucasian peers.  His mother, plaintiff Christine Dudley, has requested additional assistance from the School District for her son but has not pursued a due process hearing.

Plaintiff Eric Allston is a former student of the School District who was graduated from Lincoln Academy in May, 2005.  He was evaluated by the School District multiple times, beginning in 1998.  Each evaluation reflected that Eric needed learning support and emotional support services.  Eric was

-6-

transferred to a variety of different schools and was consistently placed in programs and classes outside of the general education curriculum.  All of these programs and classes have been predominantly and disproportionately African American. Although his guardian has complained about Eric's educational services to the School District in the past, no due process hearing has been pursued.

Plaintiff Richard Coleman is a third grade student in the School District who was evaluated and classified in 2005 as a student with a specific learning disability and with a secondary exceptionality of speech or language impairment in need of specially designed instruction.  Richard has attended both a part-time learning support class and general education classes. According to the Amended Complaint, he received racially discriminatory treatment as a result of the composition of the learning support class and was also discriminated against in the general education class by his teacher.  He asserts that he suffered the racially discriminatory treatment in violation of a Conciliation Agreement the School District entered into with the Pennsylvania Human Relations Commission in 2001.  His mother, plaintiff June Coleman, has raised concerns about the treatment of her son with the School District.  However, no due process hearing has been initiated.

Plaintiffs allege generally that the School District routinely places African-American students in classes which provide a below-grade-level and modified curriculum.  Plaintiffs

-7-

further assert that the percentage of African-American students whom the School District places in these below-grade-level or modified classes is disproportionately high compared to the percentage of African-American students in the School District.

II.

The School District defendants contend that plaintiffs' claims against them should be dismissed on the following grounds: (1) the individual plaintiffs other than the Blunt plaintiffs have not exhausted their administrative remedies; (2) the claims of the Blunt plaintiffs are time barred; (3) the organizational plaintiffs do not have standing; (4) the individually named School District defendants are not the real parties in interest; and (5) plaintiffs have failed to state a claim under § 1983.[2]

The Commonwealth defendants maintain that plaintiffs' claims against them should be dismissed because:  (1) the non-Blunt plaintiffs have failed to exhaust their administrative remedies; (2) the claims of the Blunt plaintiffs are untimely;

---

2.  The School District defendants additionally argued that the parent plaintiffs lack standing under the IDEA to sue on their own behalf.  The School District defendants have now conceded that the Supreme Court in Winkelman v. Parma City Sch. Dist., 127 S. Ct. 1994 (2007), held that parents have substantive rights under IDEA which they may enforce.  District Defs.' Reply at 12. We will consider the School District defendants' earlier argument withdrawn.

The School District defendants also contend that plaintiff Linda Johnson does not have standing to pursue any claims on behalf of her daughter, who is no longer a minor.  Linda Johnson has agreed to withdraw as a plaintiff insofar as she brings claims on behalf of her daughter.  Pls.' Mem. in Opp. to District Defs.' Mot. to Dismiss at 3, n.4.

(3) the organizational plaintiffs and parent plaintiffs[3] do not
have standing; (4) the individually named Commonwealth defendants
may not be sued under the IDEA, ADA, RA and Title VI or, in the
alternative, those claims are duplicative of claims against the
Pennsylvania Department of Education and are thus redundant; (5)
plaintiffs' claims based on alleged deficiencies in the
Commonwealth defendants' complaint investigation process fail to
state a claim; and (6) plaintiffs' state law claims are barred by
sovereign immunity.

III.

First, the School District and Commonwealth defendants
each argue that the IDEA claims of all individual plaintiffs
except those of Amber, Crystal and Michael Blunt must be
dismissed under Rule 12(b)(1) of the Federal Rules of Civil
Procedure for lack of subject matter jurisdiction because these
plaintiffs did not exhaust their administrative remedies.  When,
as here, a defendant challenges the court's subject matter
jurisdiction under Rule 12(b)(1), the plaintiff bears the burden
of persuasion to show that the matter is properly before the
court.  Kehr, 926 F.2d at 1409.  A Rule 12(b)(1) motion may be
treated either as a facial or a factual challenge to the court's
subject matter jurisdiction.  Gould, 220 F.3d at 178.  Here the

---

3.  As noted above, the Supreme Court has recently clarified that
parents do have substantive rights under the IDEA, which they may
enforce.  Winkelman v. Parma City Sch. Dist., 127 S. Ct. 1994.
To the extent that the Commonwealth defendants' motion is based
on this theory, it will be denied.

parties reference nothing other than the Amended Complaint and the administrative record.  Thus, we will confine our analysis simply to the contents of those documents.  Kimberly F. v. Ne. Educ. Intermediate Unit 19, 2007 U.S. Dist. LEXIS 35778, *19 (M.D. Pa. May 15, 2007).

   The IDEA requires states which accept federal funding for the education of disabled children to insure that those children receive a "free appropriate public education" ("FAPE"). 20 U.S.C. § 1415(a).  The Act defines a FAPE as an educational instruction "specially designed to meet the unique needs of a child with a disability, coupled with any additional related services that are required to assist a child with a disability to benefit from that instruction."  Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 127 S. Ct. 1994, 2000-01 (2007) (internal citations and quotations omitted); 20 U.S.C. § 1401(26)(A).  The primary vehicle through which a FAPE is provided is through the development and implementation of an "individualized education program" ("IEP") for each student identified as disabled. Winkelman, 127 S. Ct. at 2000.  The IDEA also includes mechanisms for review that must be made available when there are objections to the IEP or to other aspects of IDEA proceedings.  Id.  Failure to exhaust administrative remedies under the IDEA is jurisdictional.  W.B. v. Matula, 67 F.3d 484, 493 (3d Cir. 1995) (overturned on other grounds by A.W. v. Jersey City Pub. Sch., 486 F.3d 791 (3d Cir. 2007)); Kimberly F., 2007 U.S. Dist. LEXIS 35778 at *17-18.

The IDEA mandates any state or local educational agency receiving federal funding under that statute to "establish and maintain procedures ... to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies." 20 U.S.C. § 1415(a).  Among the guaranteed procedures is "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  Id. at § 1415(b)(6).  Parents and their child are entitled to an impartial due process hearing conducted by the state or local educational agency.  Id. at § 1415(f)(1).  As is the case in Pennsylvania, if the impartial due process hearing is conducted by the local educational agency, "any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency."  Id. at 1415(g); see also 22 Pa. Code § 14.162.  In Pennsylvania, the appeal is decided by a panel of three appellate hearing officers.  22 Pa. Code § 14.162(o).  A party aggrieved by the decision of the administrative appeals panel may bring a civil action challenging that decision.  Id.; 20 U.S.C. § 1415(i)(2).

It is conceded that none of the individual plaintiffs except the Blunt plaintiffs utilized at any level the administrative remedial system outlined in the IDEA.  Instead, these plaintiffs argue that they should be excused from the

-11-

exhaustion requirement.  A plaintiff may bypass this requirement
where:  (1) exhaustion would be futile or inadequate; (2) the
issue presented is purely a legal question; (3) the
administrative agency cannot grant relief; or (4) exhaustion
would work severe or irreparable harm upon a litigant.  Beth V.
v. Carroll, 87 F.3d 80, 88-89 (3d Cir. 1996).  Where plaintiffs
allege "systemic legal deficiencies and, correspondingly, request
system-wide relief that cannot be provided (or even addressed)
through the administrative process" as described in the IDEA,
they may be excused from the exhaustion requirement.  Id. at 89.
Here, plaintiffs argue that they may bypass their administrative
remedies because compliance would be futile and also because the
administrative agency cannot grant the requested relief,
particularly the system-wide relief they seek.

        The "policy of requiring exhaustion of remedies in the
Disabilities Education Act is a strong one."  Komninos v. Upper
Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994).  A
primary purpose of requiring administrative exhaustion prior to
filing a civil suit in the IDEA context is to "develop the
factual record and resolve evidentiary disputes concerning, for
example, evaluation, classification, and placement."  W.B., 67
F.3d at 496.  In addition, use of the administrative process
supports "Congress' view that the needs of handicapped children
are best accommodated by having the parents and the local
education agency work together to formulate an individualized
plan for each handicapped child's education."  Komninos, 13 F.3d

-12-

at 778 (3d Cir. 1994), quoting Smith v. Robinson, 468 U.S. 992, 1011-12 (1984).  Plaintiffs bear the burden of showing that they should be permitted to avoid the administrative procedures.  Doe v. Ariz. Dept. of Educ., 111 F.3d 678, 681 (9th Cir. 1997).

The Amended Complaint contains only one direct reference to administrative exhaustion by plaintiffs:  "The Blunt Plaintiffs have fully exhausted their administrative remedies under the IDEA, 20 U.S.C. § 1415; the other individual Plaintiffs are excused from doing so because such efforts would be futile." Am. Compl. at ¶ 12.  Such a conclusory statement is insufficient to meet the burden of the non-Blunt individual plaintiffs to show that they may circumvent the exhaustion requirement.  On a motion to dismiss, "we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986); see also Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-64 (2007).

Plaintiffs now contend that the Blunt plaintiffs' unsatisfactory experience with the administrative process, which is well documented in the Amended Complaint, shows that recourse to that process by the other individual plaintiffs would be futile and any relief available therefrom would be inadequate. We disagree.  From the facts laid out in the Amended Complaint, it would be mere speculation for us to conclude that the administrative process would fail each of the other individually named plaintiffs.  Each plaintiff presents a very different disability profile.  Significantly, Amber Blunt was accorded some

-13-

relief through the administrative process.  Though she found the thirty hours of compensatory education awarded by the Appeals Panel inadequate, dissatisfaction alone does not amount to inadequacy or futility.  Falzett v. Pocono Mt. Sch. Dist., 150 F. Supp. 2d 699, 703 (M.D. Pa. 2001); Ass'n for Retarded Citizens of Ala. v. Teague, 830 F.2d 158, 162 (11th Cir. 1987).

        The non-Blunt individual plaintiffs also argue that they should be excused from administrative exhaustion under the IDEA because they have alleged failures by the School District defendants on a systemic level and the inability of the administrative remedial process to provide the systemic relief requested.  The School District defendants counter that the allegations in the Amended Complaint consist predominantly of a challenge to the substance of the IEP's provided to individual students and not a challenge to the structure of the School District's special education system as a whole.

        Plaintiffs cite to two cases in support of their argument.  In Mrs. W. v. Tirozzi, plaintiffs complained that the defendants had failed to make bona fide attempts to resolve earlier complaints they had lodged against the local Board of Education and the Connecticut Department of Children and Youth Services.  832 F.2d 748, 752 (2d Cir. 1987).  The Court of Appeals for the Second Circuit determined that the plaintiffs had "pleaded an entitlement to an exemption from exhaustion of administrative remedies sufficient to overcome a motion for judgment on the pleadings." Id. at 757.  Similarly, in Beth V.,

-14-

plaintiffs also alleged defects in the dispute resolution process, specifically, that the Pennsylvania Department of Education failed to maintain an adequate system for resolving complaints under the IDEA, as mandated by federal regulations. 87 F.3d at 89. Our Court of Appeals in Beth V. did not determine the question of whether the plaintiffs could bypass exhaustion and instead remanded to the district court to consider that question. Id.

We find that the instant matter differs from Mrs. W. and Beth V. in an important respect. Unlike those cases, the overwhelming focus of plaintiffs' Amended Complaint against the School District defendants is on the individualized circumstances of the named students and the School District defendants' failure to provide these students with the FAPE to which they are entitled. Plaintiffs cannot overcome the clear emphasis on the claims of the individual students by including conclusory allegations of some systemic deficiencies. As stated by this court:

> [T]he language [of the IDEA] precludes any interpretation of [the exhaustion requirement] under which exhaustion is judged with respect to each individual remedy sought by the plaintiff, accord Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819, 1824, 149 L. Ed. 2d 958 (2001) ..., and implies that the entire action must be dismissed for lack of subject matter jurisdiction whenever any part of the dispute might be resolved at the administrative level, see Thorp v. Kepoo, 100 F. Supp. 2d 1258, 1263 (D.Haw. 2000) ('Use of the term action in the exhaustion provision suggests that the entire case is not ripe

> until those portions of the suit that may be
> exhausted have been.').

Hesling v. Avon Grove Sch. Dist., 428 F. Supp. 2d 262, 276 (E.D.
Pa. 2006); accord Falzett, 150 F. Supp. 2d at 705.  Though the
plaintiffs will not be able to obtain all of their requested
relief from the administrative process, the benefits of requiring
administrative exhaustion are still apparent given the emphasis
on the individual circumstances of each student.  As the District
of New Jersey stated, "[a] factually intensive inquiry into the
circumstances of each individual child's case is best resolved
with the benefit of agency expertise and a fully developed
administrative record."  Grieco v. N.J. Dep't of Educ., 2007 U.S.
Dist. LEXIS 46463, *20 (D.N.J. June 27, 2007) (citation omitted).
Requiring administrative exhaustion does not prejudice the
plaintiffs' right to bring a civil action for the additionally
requested relief if they remain dissatisfied at the close of the
administrative hearings.  Allowing plaintiffs to bypass the
administrative process by merely including conclusory allegations
of systemic deficiencies would permit the exception to the
exhaustion requirement to swallow the rule.

Accordingly, we will dismiss the IDEA claims of all
individual plaintiffs other than the Blunt plaintiffs against the
School District defendants for lack of subject matter
jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil
Procedure.

We must next consider plaintiffs' contentions about exhaustion under the IDEA with respect to the Commonwealth defendants.  Under the IDEA, the Pennsylvania Department of Education is responsible for the general supervision of the IDEA's implementation throughout the state.  34 C.F.R. § 300.149. This responsibility includes ensuring that the Lower Merion School District appropriately carries out the demands of the IDEA.  Id.  The gravamen of plaintiffs' Amended Complaint against the Commonwealth defendants is that the Pennsylvania Department of Education failed appropriately to supervise the School District's provision of special education services generally and has failed specifically in the areas of compliance monitoring, complaint resolution and "child find."[4]  Neither the IDEA nor the Pennsylvania regulations provides an administrative forum wherein plaintiffs can challenge the actions of the Commonwealth defendants.  Each stage of the administrative process set forth by the Pennsylvania regulations envisions a proceeding between the parents or representative of the student in question and the school district.  See e.g. 22 Pa. Code § 14.162.  Thus, requiring the plaintiffs to exhaust their administrative remedies against the Commonwealth defendants would be futile.  These allegations of systemic failure could not be remedied through any administrative process since there is none.  We will deny the

---

4.  The "child find" provisions refer to the Commonwealth defendants' obligation to identify, locate, and evaluate children with disabilities.  20 U.S.C. § 1412.

-17-

Commonwealth defendants' motion to dismiss the IDEA claims against them for failure to exhaust administrative remedies.

In addition to claims under the IDEA, School District defendants seek to dismiss the claims of the non-Blunt individual plaintiffs under the ADA, RA, Title VI, and the Public School Code for lack of subject matter jurisdiction for failure to exhaust their administrative remedies.  School District defendants maintain that the same exhaustion requirement applies here as for claims under the IDEA.

Section 1415(l) of the IDEA states:

> Nothing in this chapter shall be construed to
> restrict or limit the rights, procedures, and
> remedies available under the Constitution,
> the Americans with Disabilities Act of 1990
> [42 U.S.C.A. § 12101 et seq.], title V of the
> Rehabilitation Act of 1973 [29 U.S.C.A. § 791
> et seq.], or other Federal laws protecting
> the rights of children with disabilities,
> except that before the filing of a civil
> action under such laws seeking relief that is
> also available under this subchapter, the
> procedures under subsections (f) and (g) of
> this section shall be exhausted to the same
> extent as would be required had the action
> been brought under this subchapter.

As our Court of Appeals has explained, "[t]his provision prevents plaintiffs from circumventing IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute- e.g., ... section 504 of the Rehabilitation Act, or the ADA." Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 281 (3d Cir. 1996).

Of the six counts in the Amended Complaint, the two brought under the ADA and RA are clearly based on the same

-18-

allegations as plaintiffs' IDEA claim and seek relief that would be available under that statute.  The parties agree that plaintiffs' ADA and RA claims are therefore subject to the exhaustion requirement.  Since we have decided that the plaintiffs' were not excused from exhausting their administrative remedies under the IDEA, the claims of the non-Blunt individual plaintiffs against the School District Defendants under the ADA and RA will fail just as their IDEA claims fail.

The School District and Commonwealth defendants also seek the dismissal of the plaintiffs' claim under Title VI on the ground it is based primarily on a violation of the IDEA and that it should thus be subjected to the exhaustion requirement under § 1415(l).  Title VI reads:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

The plaintiffs' Title VI claim is predicated on race discrimination.  While this statute outlaws race, color and national origin discrimination, it does not encompass discrimination based on disability.  Consequently, the exhaustion requirement under § 1415(l) of the IDEA, which focuses on "the rights of children with disabilities," does not bar plaintiffs' claims under Title VI.

Finally, we conclude that plaintiffs' claim under the Public School Code requires administrative exhaustion to the same extent as plaintiffs' claim under the IDEA. Chapter 14 of the State Board of Education Regulations was promulgated pursuant to this Code. That Chapter incorporates by reference the procedural due process requirements in the regulations issued under the IDEA. It too requires exhaustion of administrative remedies before bringing a claim under that Chapter. 22 Pa. Code § 14.102(a)(xx); 34 C.F.R. § 300.516.[5]

In sum, non-Blunt individual plaintiffs have not exhausted their administrative remedies under the IDEA, ADA, RA, and the Public School Code. These claims against the School District must be dismissed for lack of subject matter jurisdiction. The motion of the Commonwealth defendants to dismiss plaintiffs' claims under the IDEA, ADA, and RA on exhaustion grounds is denied. For reasons set forth later in this Memorandum, we do not pass upon the Commonwealth defendants' argument that the claim against them under the Public School Code be dismissed for failure to exhaust.

---

5. The present version of the State Board of Education Regulations was adopted on June 8, 2001 and incorporated by reference §§ 300.500 - 300.515 of Title 34 of the C.F.R. This included the provision regarding civil actions and requiring exhaustion of administrative remedies, which was at the time § 300.512. Title 34 of the C.F.R. was amended and renumbered as of October 13, 2006. The provision regarding civil actions is now § 300.516.

IV.

Next, the School District and Commonwealth defendants argue that the claims of Amber, Crystal and Michael Blunt should be dismissed as untimely.  We consider defendants' statute of limitations claim as a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002); Jaffess v. Council Rock Sch. Dist., 2006 U.S. Dist. LEXIS 40888, 3-5 (E.D. Pa. June 19, 2006).  For the defendants to prevail on their motion, the Blunt plaintiffs' alleged noncompliance with the limitations period must be clear from the face of the Amended Complaint.  Robinson, 313 F.3d at 135.

We begin by considering the School District defendants' arguments as to the Blunt plaintiffs' IDEA claims.  Plaintiffs and the School District defendants agree that the IDEA was amended, effective July 1, 2005, to provide a ninety-day limitations period to bring a civil action.  The IDEA, as amended, reads:

> [A]ny party aggrieved by the findings and decision [of the hearing officer] shall have the right to bring a civil action with respect to the complaint presented pursuant to this section ... .
>
> The party bringing the action shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation for bringing such action under this subchapter, in such time at the State law allows.

-21-

14 U.S.C. § 1415(i)(2)(A) and (B); see also Individuals with Disabilities Education Improvement Act of 2004, P.L. 108-446, Title I, § 302.  Because Pennsylvania does not have an applicable State law, the default ninety-day statute of limitations period applies.  In states like Pennsylvania, which uses a two-tiered administrative process, the "date of the decision of the hearing officer" refers to the date on which any appeal of the hearing officer's decision is decided.  See 20 U.S.C. § 1415(g). Amendments to the IDEA are not applied retroactively.  Lawrence Twp. Bd. of Educ. v. N.J., 417 F.3d 368, 370 (3d Cir. 2005).

The School District defendants argue that the amended version of the IDEA is applicable to the present action. Plaintiffs, however, contend that the 1997 version of the IDEA controls.  Under this earlier version, the applicable statute of limitations for the Blunt plaintiffs' claims was two years.[6]  If the School District defendants are correct, the Blunt plaintiffs' claims under the IDEA are untimely.

We review the relevant chronology.  The School District denied the Blunts' request for transitional services on April 8, 2005.  Three days later, on April 11, 2005, the Blunts requested a due process hearing under the IDEA.  The hearing was held over

---

6.  The prior version of the IDEA did not set forth a specific limitations period for an action seeking judicial review of an administrative proceeding.  Instead, the IDEA limitations period was borrowed from the time period in which a plaintiff can bring a tort action.  In Pennsylvania, this period was two years.  See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 251 (3d Cir. 1999).

the course of two sessions – the first on May 19, 2005, and the second on June 20, 2005.  On July 25, 2005, the Hearing Officer issued his decision.  Both the Blunts and the School District filed exceptions to the Hearing Officer's decision, which was then considered by the Appeals Panel.  The Appeals Panel issued its ruling on August 31, 2005.  The present action challenging the Appeals Panel's ruling was filed in this court against the School District defendants almost two years later on July 30, 2007.

The Blunts maintain that the ninety-day limitations period applies only to due process hearings *requested* after July 1, 2005, the date the IDEA amendments became effective.  They claim that the two year statute of limitations from the 1997 version of IDEA applies because their request for a due process hearing occurred on April 11, 2005.  They further contend that applying the ninety-day statute of limitations period in this action would be an impermissible retroactive application of the IDEA amendments.  We are not persuaded.

First, the amended version of the IDEA took effect on July 1, 2005.  By its terms, it is applicable to all decisions of a hearing officer which were handed down on or after that date.  In Pennsylvania, with an Appeals Panel, the amendment is applicable to the decisions of the panel that occur on or after that date.  The date that the hearing was requested is irrelevant.  E.g. Jaffess, 2006 U.S. Dist. LEXIS 40888; Pettigrew v. Middletown Area Sch. Dist., 2006 U.S. Dist. LEXIS 69041 (M.D.

-23-

Pa. Sept. 26, 2006); Emily Z. v. Mt. Leb. Sch. Dist., 2006 U.S.
Dist. LEXIS 64124 (W.D. Pa. Sept. 7, 2006); accord DeKalb County
Sch. Dist. v. J.W.M., 445 F. Supp. 2d 1371 (N.D. Ga. 2006).

     In Jaffess the court applied the amended IDEA to
plaintiffs' claims.  It reasoned that "[a]lthough Plaintiffs
began the initial due process proceedings prior to July 1, 2005,
the Hearing Officer and Appeals Panel decisions were both issued
after the 2004 IDEA's effective date."  Jaffess, 2006 U.S. Dist.
LEXIS 40888 at *7.  Correspondingly, the court in Emily Z.
stated, "I find that the version of the IDEA to be applied with
respect to appeals from final decisions in due process hearings
is the version in effect on the date of the decision being
appealed."  Emily Z., 2006 U.S. Dist. LEXIS 69041 at *7.

     Plaintiffs are incorrect that applying the amended
version of the IDEA to this action constitutes a retroactive
application of that statute.  In determining whether a change in
the law has retroactive effects, "the court must ask whether the
new provision attaches new legal consequences to events completed
before its enactment."  Landsgraf v. USI Film Products, 511 U.S.
244, 269-70 (1994).  Here, the date of the administrative
decision giving rise to plaintiffs' complaint was August 31,
2005, some two months after the amendments became effective.
Thus, the operative "event" was not "completed" before the
amended statute took effect.  Applying the amended version of the
IDEA is not a retroactive application of the amendments, even
though the hearing giving rise to the hearing officer's decision

was requested before the effective date of the amendments.
Jaffess, 2006 U.S. Dist. LEXIS 40888; DeKalb, 445 F. Supp. 2d
1371.

The cases cited by plaintiffs are inapposite.  In R.G.
v. Glen Ridge Board of Education, the hearing officer issued his
decision on March 17, 2005 and plaintiff filed her complaint in
federal court on June 13, 2005, some ninety-five days later.
2005 U.S. Dist. LEXIS 30606 (D.N.J. Dec. 2, 2005).  At the time
plaintiff filed her complaint, the statute of limitations for
such actions was two years.  The court refused to apply
retroactively the ninety-day statute of limitations that became
effective in the meantime.  Id. at *12.  See also Marc V. v.
North East Independent School District, 455 F. Supp. 2d 577 at
587, n.1 (W.D. Tex. 2006).

Likewise, in Farzana K. v. Indiana Department of
Education, the administrative determination was made prior to
July 1, 2005.  2005 U.S. Dist. LEXIS 38561 (N.D. Ind. Dec. 20,
2005) (*rev'd on other grounds* 473 F.3d 703 (7th Cir. 2007).  The
Farzana court stated in dicta that applying the statute of
limitations under the amended IDEA would constitute a retroactive
application of the amendments.  Id. at *19-20.

Finally, in P.S. v. Princeton Regional Schools Board of
Education, the hearing officer's decision was made prior to
July 1, 2005, although the plaintiff did not file her complaint
until December of that year.  2006 U.S. Dist. LEXIS 252 (D.N.J.
Jan. 6, 2006).  The defendant argued that the ninety-day

-25-

limitations period started running on plaintiff's claims on
July 1, 2005, the day the amendments took effect.  The court
concluded that such an application of the limitations period
would be an impermissible retroactive application of the IDEA
amendments.  Id. at *5-6.  It explained that "[T]he limitations
period begins to run on 'the date of the decision of the hearing
officer.'  Substituting the effective date of the statute as the
accrual date, as defendant would have this Court do, reads in a
provision of the statute that is not there."  Id. at *5.  See
also Grieco, 2007 U.S. Dist. LEXIS 46463 at *30; Pettigrew, 2006
U.S. Dist. LEXIS 69041.

        The R.G., Marc V., Farzana K., P.S., Grieco, and
Pettigrew cases cited by plaintiffs are clearly distinguishable
from the present action where the hearing officer's decision was
made after the effective date of the amendments.  Applying the
IDEA as amended to an Appeals Panel's decision made after the
effective date of the amendments is not a retroactive application
of the changes in the statute.  Here, as noted above, the
relevant decision was handed down by the Appeals Panel on
August 31, 2005, which is after the July 1, 2005 effective date
of the amended IDEA.  The Blunt plaintiffs' claims against the
School District defendants under the IDEA are untimely and will
be dismissed.

        The School District defendants further contend that the
Blunt plaintiffs' claims under the ADA, RA and Title VI should be
dismissed as untimely because those claims, like the IDEA claim,

-26-

represent an appeal from the Appeals Panel decision and because those claims were filed more than two years after Amber Blunt graduated from the School District.  The Commonwealth defendants join in this argument with respect to the Title VI claims.  The Blunt plaintiffs do not dispute that the limitations period under the IDEA should be applied to their claims under the ADA and RA. Because we have already determined that the applicable statute of limitation with respect to such an appeal is ninety days, the Blunt plaintiffs' claims under the ADA and RA will be dismissed as untimely.

Defendants further maintain that the Blunts' claims under the ADA, RA, Title VI and § 1983 are barred by the borrowed two year Pennsylvania statute of limitations for personal injury actions.[7]  See Smith v. City of Phila., 345 F. Supp. 2d 482, 485 (E.D. Pa. 2004); Stanley v. Trs. of the Cal. State Univ., 433 F.3d 1129, 1135 (9th Cir. 2006); Foster v. Morris, 2006 U.S. App. LEXIS 31235, *6 (3d Cir. Dec. 18, 2006); 42 Pa. Cons. Stat. Ann. § 5524.  Defendants assert that any alleged violations of law with respect to Amber Blunt would have ceased at the time of her graduation from Lower Merion High School on June 9, 2005.[8]  The

_____

7.  When a federal civil rights statute does not contain its own statute of limitations, a court should apply the state's statute of limitations for personal injury actions.  See Wilson v. Garcia, 471 U.S. 261, 275 (1985).

8.  The date of Amber's graduation from high school appears in the record of the her administrative hearing, not in the Amended Complaint.  Ordinarily, on a motion to dismiss the Court would not be permitted to consider matters outside the parties'
                                                    (continued...)

instant action was not filed against the School District defendants until July 30, 2007, and against the Commonwealth defendants until September 26, 2007.

"The general rule is that the statute of limitations begins to run as soon as a right to institute and maintain suit arises... ." Haugh v. Allstate Ins. Co., 322 F.3d 227, 231 (3d Cir. 2003).  However, in circumstances where the plaintiff does not discover her injury despite the exercise of reasonable diligence, the cause of action will not accrue until the plaintiff knows or has reason to know of the injury.  Id.  In a discrimination case, the focus is on when the discriminatory act occurs, not when the consequences of that act become painful. Chardon v. Fernandez, 454 U.S. 6, 8 (1981).

The Amended Complaint does not contain any allegations that Amber's rights were infringed by the defendants after her graduation from the school system on June 9, 2005.  Nor do the Blunt plaintiffs allege that they were unaware of their injury until after Amber's graduation.  Thus, the Blunt plaintiffs' claims under the ADA, RA, Title VI and § 1983 were filed outside of the two year limitations period for these claims for relief.

---

8.(...continued)
pleadings.  "Here, however, in an appeal from an administrative hearing in which the hearing record, including the transcript, must be included with the initial pleading seeking review (20 U.S.C.A. § 1415(i)(2)(C)(i) (West. Supp. 2006)), there can be no genuine dispute as to the authenticity of the hearing transcript" and we may consider it.  DeKalb, 445 F. Supp. 2d 1378.

The Blunt plaintiffs' claims under the ADA, RA, Title VI and § 1983 will be dismissed as to the School District defendants.

In addition, the Blunt plaintiffs concede that their claims against the Commonwealth defendants under the IDEA, ADA and RA are untimely and should be dismissed.  Pls.' Mem. in Opp. to Commw. Defs.' Mot. to Dismiss at 13.  We also determine that the Blunt plaintiffs' claims under Title VI will be dismissed as untimely against the Commonwealth defendants.[9]

In sum, all of the Blunt plaintiffs' claims against the School District and Commonwealth defendants under the IDEA, ADA, RA, Title VI and § 1983 will be dismissed.  Although the motion of School District defendants seeks the dismissal of all counts of the Amended Complaint, neither of the two briefs filed by the School District defendants in support of their motion addresses whether the Blunt plaintiffs' supplemental claims under the Public School Code should also be dismissed as untimely.  Thus, we will deny the motion of the School District defendants to dismiss those claims as to the Blunt plaintiffs.  We defer consideration of the Blunt plaintiffs' claims against the Commonwealth defendants under the Public School Code until later in the Memorandum.

V.

The School District and Commonwealth defendants further assert that Concerned Black Parents ("CBP") and the Mainline

_____

9.  There is no § 1983 claim against the Commonwealth defendants.

Branch of the NAACP ("Mainline Branch") lack standing to sue, either in their own behalf or on behalf of their members.  The court considers a motion to dismiss for lack of standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Ballentine v. U.S., 486 F.3d 806, 810 (3d Cir. 2007).  When considering a motion to dismiss for lack of standing, the trial court must accept as true all material allegations in the plaintiff's complaint.  Warth v. Seldin, 422 U.S. 490, 501 (1975).

> The Amended Complaint describes the CBP as a:

> [N]on-profit Pennsylvania corporation whose purpose is, *inter alia*, to promote equity and excellence in the response of school districts to the needs of diverse student populations; to address issues related to education for populations identified as minority and/or African American; and to identify, monitor, and inform parents about educational issues impacting disadvantaged students, their families and the community at large. [...] The members of the organization are residents of the Lower Merion School District and current and former parents or students of the District.

Pls.' Am. Compl. at ¶¶ 134-35.  The Amended Complaint sets forth a slightly more extensive background and history with respect to the Mainline Branch:

> Historically, the Mainline Branch has received numerous complaints from parents for actions relating to the treatment of African American children in the LMSD.  Among these complaints is one concerning the disproportionate number of African Americans students placed in modified classes and in segregated special education courses that deny them access to the general education curriculum and to the Pennsylvania Department

> of Education's standards.  The Branch has
> served as an advocate for parents, held
> educational forums to provide important
> information regarding how to navigate the
> system, and assisted parents to assure that
> their children receive academic work
> consistent with their grade level.  The
> Branch has consistently worked with parent
> groups, such as the Concerned Black Parents
> Group, to gather information concerning the
> educational gap that exists for African-
> American students in the LMSD.

Pls.' Am. Compl. at ¶ 138.  Both CBP and the Mainline Branch

assert claims on their own behalf as well in a representational

capacity on behalf of their members.

An organization has standing to sue in its own right

when it satisfies the traditional test of individual standing

based on Article III of the Constitution.  The Supreme Court has

explained:

> [A]t an irreducible minimum, Art. III
> requires the party who invokes the court's
> authority to show that he personally has
> suffered some actual or threatened injury as
> a result of the putatively illegal conduct of
> the defendant, and that the injury fairly can
> be traced to the challenged action and is
> likely to be redressed by a favorable
> decision.

Valley Forge Christian College v. Americans United for Separation

of Church and State, Inc., 454 U.S. 464, 472 (1982) (internal

quotations and citation omitted).  As a part of this test, an

organization must allege that it has suffered a tangible injury.

Sierra Club v. Morton, 405 U.S. 727, 735.  It is not sufficient

for the organization to claim that it has an ideological or

abstract social interest that has been adversely affected.  Id.

Nowhere in the Amended Complaint does CBP or the Mainline Branch allege that they have been injured in any respect by defendants' conduct.

CBP and Mainline Branch argue that the court can infer injury from the allegations of the Amended Complaint.  Namely, they contend by virtue of their missions they have needed to divert their limited resources to identify and cure the deficiencies in defendants' conduct and that such economic harm is sufficient to confer standing on them.  Plaintiffs cite to Havens Realty Corporation v. Coleman, 455 U.S. 363 (1982), in support of this contention.

In Havens Realty, plaintiffs sued a realty company alleging that it engaged in "racial steering" when it provided different information about available housing to perspective renters depending on their race.  Among the plaintiffs was an organization called HOME, which was dedicated to securing equal opportunity in housing.  HOME sued on its own behalf.  The Havens Realty plaintiffs alleged in their complaint that:  "Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services.  Plaintiff HOME has had to devote significant resources to identify and counteract the defendant[s'] racially discriminatory steering practices."  Id. at 379.  The Supreme Court ruled unanimously that such allegations, if true, constituted an injury in fact that would confer standing on HOME.

HOME's allegations in Havens Realty differ markedly from the allegations of BCP and the Mainline Branch in the present case.  Plaintiffs here do not allege any injury whatsoever to the organizational plaintiffs.  All this court may reasonably infer from the Amended Complaint is that the defendants' conduct may have caused BCP and the Mainline Branch to "suffer[] a setback to the organization[s'] abstract social interests."  Id.  Because this is not sufficient to confer standing, the claims of plaintiffs BCP and the Mainline Branch brought on their own behalf will be dismissed.

Nor have these plaintiffs alleged sufficient facts to maintain a claim that they have standing to sue on the behalf of their members.  For an organization to have such representational standing, it must meet the three-part test articulated by the Supreme Court in Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333 (1977).  Under the Hunt test,

> An association has standing to bring suit on behalf of its members when:  (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of the individual members.

Id. at 343.  CBP and the Mainline Branch have not provided the court with the identity of any member or alleged in the Amended Complaint that any of their members has suffered an injury. Without that information, the court has no basis to conclude that

the organizations have standing to bring claims on behalf of their members.

Therefore, the claims of CBP and Mainline Branch against all defendants will be dismissed for lack of standing. See also Kessler Inst. for Rehab., Inc. v. Mayor and Council of Borough of Essex Fells, 876 F. Supp. 641, 656 (D.N.J. 1995).

VI.

The individual defendants, all of whom have been sued in their official capacities only, have moved to dismiss on the ground that the claims against them are duplicative of those brought against the School District, the School Board, and the Department of Education.  These defendants rely primarily on the Supreme Court's Eleventh Amendment jurisprudence.  In Hafer v. Melo, the Court stated that "[o]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."  502 U.S. 21, 25 (1991) (citations and internal quotations omitted).  "[T]he real party in interest in an official-capacity suit is the government entity itself and not the named official."  Id.  The individual defendants argue that because each is a representative of one of the government entities sued by plaintiffs, any claim against them in their official capacities is redundant and serves only to complicate the litigation unnecessarily.  Plaintiffs counter that each of the individually named defendants was properly named in their official capacities in this lawsuit and thus that they ought not to be dismissed.

-34-

This court has determined repeatedly that when a suit against individual defendants would be duplicative of those against a government entity, which is also sued, the claims against the individuals should be dismissed as the government entity is the real party in interest.  Irene B. v. Phila. Acad. Charter Sch., 2003 U.S. Dist. LEXIS 3020 at *31-32 (E.D. Pa. Jan. 29, 2003); Doe v. Allentown Sch. Dist., 2007 U.S. Dist. LEXIS 70355 at *29, n.9 (E.D. Pa. Sept. 21, 2007);  Montanye v. Wissachickon Sch. Dist., 2003 U.S. Dist. LEXIS 15570 at *18 (E.D. Pa. Aug. 11, 2003); accord McCachren v. Blacklick Valley Sch. Dist., 217 F. Supp. 2d 594, 599 (W.D. Pa. 2002); Grieco, 2007 U.S. Dist. LEXIS 46463.  This court has also specifically determined that claims asserted against school board members and school district employees in their official capacities are to be treated as claims against the school district and school board respectively as the entities that employ the individuals. Montanye, 2003 U.S. Dist. LEXIS 15570.  Further, defendants Lower Merion School District, Lower Merion School Board and the Commonwealth Department of Education admit that the individuals named are their official representatives.  The non-individual defendants do not seek to avoid liability by removing these individual defendants but instead acknowledge that any wrongdoing by those individual defendants is attributable to them.

        We agree that the naming of the individual defendants in this case is redundant.  Suing such individuals in their official capacities is the functional equivalent of suing the

-35-

government entity which those individuals serve.  As plaintiffs
themselves concede, "official-capacity suits generally represent
only another way of pleading an action against an entity of which
an officer is an agent."  <u>Monell v. Dep't of Soc. Servs.</u>, 436
U.S. 658, 691 (1978).  In eliminating the redundant claims
against individually named persons, the court is merely
simplifying the litigation in a way that does not cause any
prejudice to plaintiffs.

Accordingly, we will dismiss the individually named
School District and Commonwealth defendants.

VII.

The School District defendants seek the dismissal of
Count V of the Amended Complaint, which asserts a claim under
§ 1983 for failure to state a claim for which relief can be
granted under Rule 12(b)(6) of the Federal Rules of Civil
Procedure.  That Count alleges violations of plaintiffs'
constitutional right to equal protection of the laws and
statutory rights under the IDEA, ADA and RA.[10]  We will consider
the arguments of the School District defendants only with respect
to the non-Blunt individual plaintiffs, as we have previously
determined that the Blunts' claims under § 1983 are untimely.
<u>See</u> III, <u>supra</u>.

---

10.  Count V of the Amended Complaint contains allegations
against the School District defendants only.  As noted earlier,
there is no § 1983 claim against the Commonwealth defendants.

Recent precedent from our Court of Appeals prevents plaintiffs from asserting a § 1983 claim for violations of the IDEA and RA.  A.W., 486 F.3d 791.  The court in A.W. held that the remedial schemes of the IDEA and § 504 of the RA were sufficiently comprehensive to preclude § 1983 liability for violations of those statutes.  Id.  The decision of the Court of Appeals in A.W. was extended in a recent district court decision to violations of the ADA as well.  Taylor v. Altoona Sch. Dist., 2007 U.S. Dist. LEXIS 62177 (W.D. Pa. Aug. 23, 2007).

Plaintiffs admit that under A.W. their claim under § 1983 must be dismissed to the extent that it is based on a violation of the IDEA, ADA or RA.  Pls.' Mem. in Opp. to District Defs.' Mot. to Dismiss at 23, citing A.W., 486 F.3d 791. Plaintiffs, however, assert that Count V of the Amended Complaint also alleges that the School District defendants violated their Fourteenth Amendment constitutional right not to be discriminated against on the basis of race, and that their § 1983 claim should not be dismissed insofar as it rests on these allegations.

The Amended Complaint states:

232.  Lower Merion School District's custom and practice is to deny African American students the full range of educational services available to students under the IDEA.

233.  Defendant Board Members and Jamie Savedoff, acting with the necessary policy-making authority and with deliberate indifference to the rights of African American Students has allowed the Lower Merion School District to apply policies, practices or customs which have deprived

-37-

> African American students and their parents
> of *their rights to equal protection of the*
> *laws* as well as their statutory rights under
> the ADA and Rehabilitation Act.

Pls.' Am. Compl. at ¶¶ 232-33 (emphasis added).  The language used by plaintiffs unambiguously brings a claim under § 1983 based on a violation of the equal protection clause of the United States Constitution.  Our Court of Appeals has emphasized that a plaintiff may resort to § 1983 for constitutional violations, even if that statute cannot be used to remedy statutory violations, such as under the IDEA.  <u>A.W.</u>, 486 F.3d at 798, <u>quoting</u> <u>Sellers v. Sch. Board of Manassas</u>, 141 F.3d 524 (4th Cir. 1998).  Plaintiffs use of the phrase "as well as" makes clear that their allegations under the equal protection clause are distinct from their allegations under the IDEA, ADA and RA.

Thus, to the extent that the claims of the non-Blunt individual plaintiffs in Count V of the Amended Complaint are based on purported violations of their statutory rights under the IDEA, ADA and RA, they will be dismissed.  To the extent that the claims in Count V allege a violation of the plaintiffs' rights under the Fourteenth Amendment to the Constitution, the motion to dismiss will be denied.

### VIII.

The Commonwealth defendants contend that plaintiffs' claims based on alleged deficiencies in the Commonwealth's complaint investigation process should be dismissed under Rule 12(b)(6) because plaintiffs have failed to state such a claim.

The Commonwealth defendants maintain that plaintiffs have not alleged that any complaints were filed with respect to the student plaintiffs.  Plaintiffs counter that they do not seek to the challenge the outcome of an individual complaint resolution process but instead are alleging a general failure of the Commonwealth defendants to discharge their responsibilities under the IDEA.  We agree with plaintiffs.  Their allegations regarding the Commonwealth's complaint investigation process are allegations of fact in support of a broader claim of relief, which does not require the individual plaintiffs to have filed any complaints.  We will deny the motion of the Commonwealth defendants on this ground.

                                IX.

          Lastly, the Commonwealth defendants argue that Count VI, which alleges that defendants violated the Public School Code, should be dismissed as to them because they have immunity against such claims under the Eleventh Amendment.  The Eleventh Amendments states:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  The Supreme Court held in Hans v. Louisiana that the Eleventh Amendment additionally prohibits suits against any state by its own citizens.  134 U.S. 1, 18 (1890).  Plaintiffs argue that states only have sovereign immunity as to claims against them for monetary damages, and cannot assert such

                               -39-

immunity where, as here, the plaintiffs seek injunctive relief. Though a federal court may enjoin a state officer from violating federal law, Ex parte Young, 209 U.S. 123 (1908), this argument does not help plaintiffs.

In Pennhurst State School and Hospital v. Halderman, the Supreme Court held that the Eleventh Amendment prohibits federal courts from enjoining state officers from violating state law.  465 U.S. 89, 121 (1984).  The Court stated that:  "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment. ...  We now hold that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction."  Id.  In Count VI of the Amended Complaint, plaintiffs plainly seek an injunction against state officers to force them to comply with state law, that is, the Public School Code of 1949.  Under Pennhurst, a federal court is barred from granting such relief.  As a result, Count VI of the Amended Complaint will be dismissed against the Commonwealth defendants for lack of subject matter jurisdiction.

X.

In sum, we will grant the motion of the School District defendants to dismiss the following claims from plaintiffs' Amended Complaint:  (1) the claims of the non-Blunt individual plaintiffs under the IDEA, ADA, RA and the Public School Code; (2) claims brought by Linda Johnson on behalf of her daughter; (3) all claims brought by the Blunt plaintiffs under the IDEA,

-40-

ADA, RA, Title VI and § 1983; (4) all claims brought by the organizational plaintiffs, CBP and the Mainline Branch; (5) claims by all remaining plaintiffs against individual defendants Jamie Savedoff, Michael Kelly, Susan Guthrie, Linda Doucette-Ashman, Gary Friedlander, Lyn Kugel, Diane Dibonaventuro, Theodore Lorenz, Jerold Novick, Lisa Pliskin and David Ebby; and (6) claims by all remaining plaintiffs under § 1983, except to the extent that those claims allege a violation of the plaintiffs' rights under the equal protection clause of the Fourteenth Amendment to the Constitution.  The motion of the School District defendants to dismiss the Amended Complaint will otherwise be denied.

Finally, we will grant the motion of the Commonwealth defendants to dismiss the following claims from the Amended Complaint:  (1) claims brought by Linda Johnson on behalf of her daughter; (2) all claims brought by the Blunt plaintiffs under the IDEA, ADA, RA, and Title VI; (3) all claims brought by the organizational plaintiffs, CBP and the Mainline Branch; (5) claims by all plaintiffs against Gerald Zahorchak and John Tommasini; and (6) claims by all plaintiffs under the Public School Code.  The motion of the Commonwealth defendants to dismiss the Amended Complaint will otherwise be denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMBER BLUNT, et al.          :       CIVIL ACTION
                               :
       v.                :
                               :
LOWER MERION SCHOOL      :
DISTRICT, et al.          :       NO. 07-3100

ORDER

AND NOW, this 15th day of February, 2008, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1)  the motion of defendants Lower Merion School District, Lower Merion School Board, Jamie Savedoff, Michael Kelly, Susan Guthrie, Linda Doucette-Ashman, Gary Friedlander, Lyn Kugel, Diane Dibonaventuro, Theodore Lorenz, Jerold Novick, Lisa Pliskin and David Ebby (collectively "School District defendants") to dismiss is GRANTED in part and DENIED in part. The motion is granted as to the following counts of the Amended Complaint:

          (a)  Counts I, II, III, IV, V and VI are dismissed against the School District defendants with respect to plaintiff Linda Johnson insofar as she brings a claim on behalf of her daughter, Lydia Johnson;

          (b)  Counts I, II and III are otherwise dismissed against the School District defendants;

(c)  Counts IV, V and VI are dismissed against
     defendants Jamie Savedoff, Michael Kelly,
     Susan Guthrie, Linda Doucette-Ashman, Gary
     Friedlander, Lyn Kugel, Diane Dibonaventuro,
     Theodore Lorenz, Jerold Novick, Lisa Pliskin
     and David Ebby;

(d)  Count IV is dismissed against Lower Merion
     School District and Lower Merion School Board
     with respect to plaintiffs Amber Blunt,
     Crystal Bunt, Michael Blunt, Concerned Black
     Parents, Inc., and the Mainline Branch of the
     NAACP;

(e)  Count V is dismissed against Lower Merion
     School District and Lower Merion School Board
     with respect to plaintiffs Amber Blunt,
     Crystal Blunt, Michael Blunt, Concerned Black
     Parents, Inc., and the Mainline Branch of the
     NAACP, and is dismissed against Lower Merion
     School District and Lower Merion School Board
      insofar as it is based on alleged violations
     of the IDEA with respect to plaintiffs Linda
     Johnson, Lydia Johnson, Carol Durrell, Salem
     Hall, Chantae Hall, Christine Dudley, Walter
     Whiteman, Eric Allston, June Colemen and
     Richard Coleman;

-2-

     (f)   Count VI is dismissed against Lower Merion
School District and Lower Merion School Board
with respect to plaintiffs Linda Johnson,
Lydia Johnson, Carol Durrell, Salem Hall,
Chantae Hall, Christine Dudley, Walter
Whiteman, Eric Allston, June Colemen, Richard
Coleman, Concerned Black Parents, Inc., and
the Mainline Branch of the NAACP; and

    (2)   the motion of defendants Pennsylvania Department
of Education, Gerald Zahorchak and John Tommasini (collectively
"Commonwealth defendants") to dismiss the Amended Complaint is
GRANTED in part and DENIED in part.  The motion is granted as to
the following counts of the Amended Complaint:

     (a)   Counts I, II, III, IV and VI are dismissed
against the Commonwealth defendants with
respect to plaintiff Linda Johnson insofar as
she brings a claim on behalf of her daughter,
Lydia Johnson;

     (b)   Counts I, II, III, IV and VI are otherwise
dismissed against defendants Gerald Zahorchak
and John Tommasini;

     (c)   Counts I, II, III and IV are dismissed
against defendant Pennsylvania Department of
Education with respect to plaintiffs Amber
Blunt, Crystal Blunt, Michael Blunt,

-3-

Concerned Black Parents, Inc., and the

Mainline Branch of the NAACP; and

(d)   Count VI is dismissed against defendant

Pennsylvania Department of Education.

BY THE COURT:


_____
        /s/ Harvey Bartle III
                                        C.J.